And we'll call our third and last case of this morning. Pomicter, if I'm pronouncing it correctly, v. Luzerne County Convention Center Authority and number 18-2380. Mr. Campini and Mr. Bielus. Bielus. Okay. Thank you. Good morning, Your Honor. My name is Tom Campini from the law firm of Rosen, Jenkins and Greenwald. I represent the defendants, Luzerne County Convention Center Authority and SMG. Respectfully, I will, with your permission, I'll refer them collectively as the arena. I would like to request a three-minute rebuttal. Thank you, Your Honor. May it please the court, Your Honor. This case involves an appeal of a district court's decision that enjoins and restrains the applicability and enforcement of a protest policy by the arena. Specifically, the judge's decision enjoined and restrained the provisions regarding leafletting, voice amplification, and vulgarity and profanity. Let me ask you this question. Do you concede that the voice amplification ban and restriction on profanity and vulgarity as written violate the First Amendment? I do not, Your Honor. So then tell me, based on the evidence in the record and not the hypotheticals, what is reasonable about the voice amplification ban on the one hand and the prohibition on the use of profanity and vulgarity on the other? Yes, Your Honor. With respect to the voice amplification and also with regard to the provision on vulgarity and profanity, the standard that should be reviewed is it's a facial attack. So therefore, we have to look at the text of the provision and not the facts and circumstances that are at play in the particular case. With respect to the voice amplification, there was an, I believe, an admission by Plaintiff's counsel that there are, they do believe there are situations and circumstances when the voice amplification could round out announcements relaying by customer vendors that are there, also by the arena itself. But the district court order specifically carved that out for the possibility of carving that out, right? It did, Your Honor. It basically said that they would restrict, it would not restrict the arena on a going forward basis. With respect to commercial vendors outside the arena and security messages broadcast from the arena. That's right, Your Honor. And also, I thought that it also wouldn't interfere with what was going on in the arena if there were music or something like that. Well, the voice amplification, the protest area that was set up is outside the arena and the arena has speakers throughout the area where they give announcements regarding, for example, when there's a Kevin Hart concert, you're not allowed to have cell phones and repeatedly they would put it over the loudspeaker that you're not allowed to have cell phones inside the facility. There are also the ability to make announcements regarding any safety or other related messages. There's also the ability for where there's a setup for commercial vendors outside the ability to for them to sell their wares. And so the analysis is first, it's a facial attack. So therefore we have to look at the text that's currently as written in the policy and whether it is constitutional in all ways. The court has said that a facial attack tests the law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. A facial challenge is the most difficult challenge to mount successfully and a plaintiff can only succeed in a facial challenge by establishing there are no set of circumstances that exist under which the act would be valid. The law is unconstitutional in all of its applications. So with respect to the voice application and with respect to the vulgarity and the vulgarity and I believe it's the voice amplification. I'm sorry. Go ahead. That's fine. It looks to me. I mean like the district court is really trying to slice this finely. And I'm not quite understanding what the major problem is here. The issue would be whether does the text as written in the policy whether that is unconstitutional whether by the words that are listed in the policy whether it is unconstitutional in all ways and it is our position that the way the policy is currently drafted. It is not unconstitutional. There are circumstances that it may be applicable may apply to and so but even when I look at like for example, the well. Okay, is the voice amplification still a concern in light of the carve-outs by the district court order? Your honor, I guess it would still be but how because at that point is more reactionary than it is being proactive. So it's a situation where you just said I don't what does that mean at that point the reader will be stuck reacting to a situation as opposed to having a set rules in place. So that everybody knows what the what the rules are regarding the arena and it's around in the surrounding situate surrounding area at that court's framed it for you. That's the point, right? So if the if the district court has framed it for you, the question is what you're here on appeal, you know, you don't like what the district court did right? So tell me what is it just voice amplification for the moment? What is it about what the district court did? That's problematic. That's what we're trying to figure out the problems that it the it puts the arena in a difficult situation as to not knowing what the district court will believe is satisfactory and addressing a particular situation that occurs at that point in hypothetical that you think is problematic that you won't know what to tell your client. Well, the question is for the client at this point, the way it's currently listed is not to enforce any voice amplification to allow it to happen. See what and then if there's an answer to my question, just give me an example of something that your client won't be able to do because of what the district court ordered that they want to do and believe is within the ambit of the the First Amendment and not violated of the First Amendment. Well, the the apple voice application would again as I sit here. I've had my father stand here. I had some time thinking of a particular scenario. I'm confident you came here with some scenarios in your head. So just think of one of them. Well, isn't that game set in match? I mean, it sounds like the district court was really trying to be helpful and you're not finding I mean, I can understand the client saying we still want you to go for a home run, but you've got the double. You should be happy with it. Well, I mean again, this the way it's currently set up is that the arena is in a situation where it's constantly guessing as to what would be whether it's it's particular provision is in play or not. Help us, right? Because that response isn't responsive to either Judge Ambrose or myself, right? Now, I'm going to broaden the question so that you have an opportunity to really give us a kapow with respect to either voice amplification or profanity and vulgarity. Give me an example of a situation where because of the inexactitude of the district court, your client just would have absolutely no idea what to do. Well, your Honor, it's not also a situation not knowing what to do. It's being they would have to react after the fact after the issue occurs. They would then be in the situation where they have to run into a into court and have their issue, have their the issue decided on that fact. They would have to figure out what the judge, you know, what the judges kind of speaks in kind of generalities. It doesn't necessarily give specifics as to what is hypothetical. Five protesters come in and they are yelling expletive the arena or expletive the troopers or expletive the police or I don't any of those right? What what is the arena uncertain based on the district courts ruling whether that is protected speech or not? Well, the the actual speech is the person making the when he makes their statements, whatever their particular statement is at that time. I don't necessarily believe that the First Amendment also includes the requires that a the need for a voice amplifier, particularly in this situation where the two areas where the protests with protesters congregate are right near the the entrance and exit to the to the arena. I don't believe that there's a constitutional right to be able to use a voice amplifier. We're not the the policy at issue here does not restrict them from from, you know, expressing their message. What did the district court do with regard to voice amplification? The district court said what? It says the defendants are hereby enjoined from opposing a broadband on protesters from using voice amplification open spaces outside the Higgins Sun Arena. However, this order is now without is without prejudice the authority to craft to power to the authorities power to craft a tailored rule that may restrict protesters from using voice amplification specific context in order to prevent potential interference with other permitted activities within the arena. Okay, and and what is your articulate a situation that you are unable to navigate through? Again, the position of the arena is that there is not a right to use a voice amplification system. Therefore, the constitutional Constitution does not apply First Amendment does not apply to the use of that particular mode mode or a mode of communication. They the arena is not censoring is not prohibiting the the protesters with regard to their message. There is no there's no restriction on what they can say. There's no in terms of whether it's a sign or just word of mouth or handing leaflets. They're able to do that. There's no restrictions on that. It just talks about the use of a voice amplifier in the particular situation, whatever if they're using oral communication of their if they're as you said, they're protesting regarding particular state trooper or whether it's a or in this situation was a circus. They're still able to expect to exude and to to set forth that message to the people who are walking through walking in and out of the arena. So really comes down to whether they're this technical, I guess augmentation of their voice is something that is protected by the by the First Amendment. Thank you about the profanity ban ban. The ban applies only to protesters and not to patrons. That's not true. Your Honor. It the policy is a protest policy. So therefore that provision is is in that that's why it's in the protest policy, but it does not only apply to to patron or to protesters only what is the band say that? I thought on J 10, if you look at their applies only to protesters. Pardon your Honor. Looking for the policy. It's the basis of so it's it's it's a in the appendix 180 186 and talks about protest policies. And in that there's kind of essentially bullets in some respects that says any promotional verbiage suggesting vulgarity or profanity is not permitted use of profanity is prohibited. So it's within the context of a protest policy that does not mean that it only applies to protesters. Obviously your Honor. If there was a situation where there was a fan or patron who was unruly using obscenities or vulgarity the arena reserves a right to object that individual where is that explicit is that explicit anywhere? I don't know your Honor that I was not trial counsel. So I'm not sure but I would imagine as part of part of the ticket on the back of the ticket. No, that's a policy question. The question is does the policy apply or is it said anywhere that policy applies to other than currently drafted it was for this case. It's talks about protest policies. So in theory with this this policy only applies to protesters. And and so you're singling out protesters with this ban on profanity, but nobody else. At least as as the demonstrated policy of the authority. The problem is that you're this is targeted at the protesters and no one else. I understand what you're saying your Honor, but the language that is that issue here is is is included in within a policy that sets forth the parameters for protesting at the arena. It only has an applicability to those set group of people. It is as far as I know, I'm I don't know as I stand here whether there is a separate policy that applies also to patrons when they walk in if there's something kind of like almost sense of Bill of Rights or that identifies or whether it's on the particular ticket that when they purchase something I'm not I'm not aware of but this particular language only is applied in this context applies to protesters because it's part of the arenas protest policy. You state in your reply brief that voice amplification that the voice amplification ban quote is inarguably viewpoint neutral. And therefore you argue it's constitutional and along similar lines to what Judge Sirica just asked the does the does the voice amplification ban apply to patrons of the arena commercial vendors outside of the arena arena as well as protesters. I presume your answer is no. It just applies to protesters. Yes. Yeah, I mean the protest policy only applies to protect and correct around and and and and isn't isn't that isn't that the constitutional problem that it that it only applies to them and it's not a broad-based policy. If you say it's viewpoint neutral. It can't be because doesn't apply to anybody else, right? Well, you're on the policy is only it was crafted to handle the situation where a protest occurs on the arena grounds it that that is the purpose of it is to set forth the essentially the ground rules the so everybody knows what the viewpoint neutral. Well, it's not attacking a particular viewpoint of the protester. It's again. I'm not aware of as I stand here to I'm not aware if there's a there may be I don't know. I don't know that I'm not sure if there is another policy out there that that's applicable to patrons, but the the way the the policy for protest was was was drafted. It does play only obviously to protesters. Your Honor. It's our position that this the the lower courts decision is erroneous and respectfully erroneous and should be reversed the the policy at play here is reasonable that the governing standard is whether it's reasonable as this court has noted in prior opinions. If that's a low standard to meet it doesn't have to be the most reasonable or doesn't have to be the only reasonable option. It just has to be reasonable and in this situation the the policy that's at play with regard to the arena is reasonable. It does not band like other cases that have addressed this issue with regarding the leafletting. It does not band the you leafletting it just restricts it to a certain area an area that is near the most I guess be the where there's the most action in terms of entering entrance and then exit from the buildings. They set it up at two at the two entrances and exits of the building and we believe that that is a reasonable restriction under the circumstances and that the district court was erroneous in finding that that was a violation of the First Amendment. Thank you. Thank you. Good morning, your honors. May it please the court. My name is Alexander Byliss from Saul Ewing Arnstein and Lear. I represent the plaintiffs and the appellees. If you would start with the designated protest area that seems to be the particular policy here that has the most support. I don't think it does your honor. I think the district court was right to find that the defendants had not met their burden after a trial and a year of discovery. You got cases like Hawkins and Bessie, I guess from the EDPA Hawkins, I guess from 10th Circuit and upheld total bans and leafletting outside arenas like this. I think that both those cases can be distinguished with the Bessie case. That's an unreported EDPA decision. I think frankly it's wrong and it was looking at the wrong standard when it when it dealt with the Wells Fargo arena. The Hawkins case out of the 10th Circuit deals with the Denver Galleria space and that can be distinguished from this case because of the nature of the forum there. The context and the facts there were much different. You were dealing with a narrow corridor that was bounded on both sides and was the only entrance and exit to the arena or to the performing arts area and the theaters there. And it was also used as the emergency exit and it would crowd up with people both before and during intermission at events. And in that particular context the court found that it was reasonable to ban essentially all expressive activity. But I think that case is distinguished on its facts and also does not fit very well with the Supreme Court's decisions that considered leafletting in various places. The Supreme Court has allowed leafletting and has refused to uphold bans on leafletting in places such as airports, sidewalks outside of post offices, on military bases, and in a variety of places where you know you might have an argument better than here that you could restrict that kind of activity. But even in those situations. How many entrances are there? There are two. I could show you, Your Honor. There's an east and a west gate on JA 185. You can see one gate is on one side, one gate is on the other. Patrons approach both gates from the parking lot area and the designated barricaded protest areas were two small places. They're literally right outside the door. No, Your Honor. If you can see it, if you look closely, they weren't actually close to the door. Okay, they're right outside the door. It looks like the east entrance looks like a little smaller than the west entrance in terms of the designated area. But then I saw another picture. I mean, they're very close to the door. I mean, the point here being you can't have somebody at the door because that affects traffic. I agree with that part of what you said, Your Honor. You absolutely, I think the arena would be fine with creating a buffer zone of 15 feet or so around the entrances to the doors. These are well beyond 15 feet where they designated these areas. It may look like that on this picture, but I urge the court to look at the video evidence that was submitted. That's also in the record. And I believe it, I mean, there are page numbers in the appendix 3.5 and 3.9. Did you ask for a buffer zone? We suggested it to the court and to the other side. We said it would be reasonable to have a buffer zone around the doors to allow ingress and egress and to tell people not to approach patrons as they were stuck in line because there's a better argument there that they are a captive audience. Here, they put them to the sides well away from the doors, well away from the lines and well away from where anyone can really even hear or see them. And it's an effective ban on any activity in the forum. You can't even see them? I'm looking at this. That's impossible. Yes, they can see them. Your Honor, there's testimony in the record that when patrons approach the gate, most of them come to the east gate, they line up in multiple lines. And maybe the people on the outermost line could see them in the distance, frankly, but all the people, there's testimony that all the people on the inner lines would not be able to see the people in the designated area. But it's, how high a threshold must they meet? Doesn't it have to be simply a reasonable purpose for why they put these designated areas in? It has to be a reasonable connection between both the purpose and what they did. And here, they have not met their burden of showing that there's the restriction that was reasonable. So somehow you're saying this is not reasonable. What designated protest area to you would be reasonable? What would you do? Where would you move these areas? I would not have barricaded areas at all. I would create the reverse and have a buffer zone where they could not get close to the doors, maybe 15 feet. And I would tell them not to approach patrons as they were stuck in line. But other than that, I think they should have free range to wander this space. The district court found it's tens of thousands of square feet. And if you look at the videos, you'll see it's very easy for patrons to avoid people entirely if they want to, even when they're allowed out of the protest pens as they were under the preliminary injunction that was issued by the district court. You know, the only reasons that the defendants gave for this  they wanted to prevent protesters from intermingling with and interacting with patrons. That's not a valid government objective. They also were worried about crowd control. And I think the district court correctly found that if they wanted to do the buffer zone or if they wanted to just rely on their basic powers to ban people from bringing weapons and wearing body armor, carrying open flames, inciting violence, making threats, all those things are valid exercises of their powers. And if ever a fight was to break out, there are police at every event that could lawfully take action in response to the fight. But there's no need to preemptively stick all of these protesters into these designated pens. Let me ask you about voice amplification for a second. How are your rights infringed by the revised policy if the evidence in the record was that you essentially don't use voice amplification? Well, it is a facial challenge. And what we are arguing is that it is unreasonable to ban all protesters from using any amplification and not to apply that evenly. I think the district court rightly gave the defendants a roadmap here and said if you're worried about your own messages being drowned out or the messages of vendors being drowned out, you have a rule that says don't use amplification when those messages are being broadcast. I don't think it would be difficult to administer. And that would be, I think, if the defendants, you know, went that way, we would talk with them about it. We're not going to challenge things that are, you know, reasonable is not the easiest standard for us to get over. But, you know, here where they're banning all amplification by protesters, it's just not reasonable. So even if our, and actually our client did want to use amplification. She testified to that. Sylvie Palmichter does want to use amplification. Is there any limitation on decibel on this? Sorry, Your Honor? Would a limitation on the decibel level be reasonable? That's a good question, Your Honor. I haven't thought about it. I think if they were to promulgate such a policy, we'd need to look at how it played out in the real world. I don't know, sitting here today, whether it would be reasonable. I do know that having no amplification is unreasonable. What about the profanity? Profanity is a protected speech under the First Amendment. And there's a good reason for that. And vulgarity also is protected speech. And the fact that they are only applying these restrictions to protesters, and there is no evidence in the record that it was applied across the board of patrons, is unreasonable because it just doesn't make sense. If they're worried about offending people, that's typically not a valid reason for a government to ban profanity or vulgarity. But even if, in this particular context, they thought that profanity is harmful somehow, that doesn't make sense to then only ban protesters from engaging in profanity. And what if they did ban profanity across the board? Again, Your Honor, that's not what they've done. What they've done is just banned it by protesters. And so we'd need to think about, frankly, whether that is reasonable. They'd have to come up with a legitimate reason for doing that. And right now, you know, they've got monster truck rallies, ice hockey, rock concerts, Disturbed is coming up. I mean, if they're worried about profanity, I would be more concerned about what's going on inside the arena and the patrons inside the arena, right? It crossed my mind. What's that? It crossed my mind. Do you have, you said that you would suggest a buffer zone. Any buffer zone cases involving a non-public forum that you were aware of? Well, I'm aware of your buffer zones with respect to public forums, like, for example, on the streets outside abortion clinics. Yes, Your Honor. I don't know that I've seen a buffer zone used other than in that context. I don't, I'm not aware of any. Right. So yeah, again, they'd have to support it with reasons and show that it, you know, those reasons were furthered by that policy, but that's not what we have here. They didn't go that route. You want us to go, to be the first that puts a buffer zone in a non-public forum? No, Your Honor. I don't think you need to get that far. I think you can simply say what they've done here, the designated barricaded protest zones is not reasonable. That's all you need to say. But what would be reasonable then? And you said buffer zones. Well, I, that's something that has come up. I really think that it would, you'd again have to look at exactly what they did in that context. And, you know, we would, we're not going to run it to the court if they do something that we think is reasonable. But here, what they did was not reasonable. One thing I'd like to just remind the court is that leafleting, which is really what the plaintiffs were trying to do, is historically, going back to the founding of our country, is a vital practice and it is, I believe it has been described  in the defense of liberty. And that's in the 1938 Lovell versus City of Griffin case. And throughout the decades, the Supreme Court has, yes, Your Honor? But you, can you have leaflets in this designated protest area, right? Within that small area, they were allowed to leaflet. The evidence was, suggested, well, first of all, patrons were not able to get into the barricades because it's a barricaded area. But the evidence showed that when they were in the designated areas, they were effectively prevented from leafleting anywhere because they handed out so few leaflets. And they could not get out into the rest of the paved area, this tens of thousands of square feet area, to distribute leaflets. So it almost effectively cut it off completely. Was there any attempt to have leafleting in the parking lot? The, I first of all, I don't think that would make, would be reasonable because of the safety concerns. The defendants prior to this lawsuit had been putting the pens, the leafleting designated area, out in the parking lot. As a result of this pre-lawsuit discussions, they decided they would move them onto the sidewalks. I think for safety reasons and to keep them out of the, you know, cars driving, you wouldn't want to have people leafleting out there. So, Your Honors, if you have no other questions, I think I should have moved. Thank you very much. Thank you. Here, Mr. Cabotetti. Thank you, Your Honor. With respect, again, with regard to the leafleting, this is not a case where there's been a ban of leafleting. They are free to, as Your Honor noted, to pass out leaflets from the designated area, which is, again, right next to the entrance and exit of the buildings. So, it's not a situation where they were put into the back corner of the parking lot, away from everybody else. They are right near the meat of the action. There's a reference to, I think, some Supreme Court cases. Again, those cases typically deal with the banning of leafleting. That's not what we have here. And with respect to leafleting, Justice O'Connor had said, with respect to the Lee case, that because of an airport's really kind of bad purpose situation, if it was just an airport where he flew in and out and that was it, she may have looked at the issue a little bit differently. And she actually said in her decision, her concurring opinion, which has been viewed as being the majority opinion on the issue, she had said that she would be okay with limiting it to a certain area of the airport terminal. So, even Justice O'Connor indicated that it would be okay for a government agency to restrict the leafleting to a certain area, which is what we have here. Your Honor, with respect to the issues, the governmental issues at play here, the governmental objectives, unwarned intrusion is a valid government objective. That was found by the Hawkins case, by the Tenth Circuit, by this court in the Meadowlands case. The individuals who go to these sports arenas, these entertainment arenas, they are captive audiences and should not be subject to the unwarranted intrusion while they're at these facilities. In addition to the traffic and control issues that we have potentially here, if they're allowed to just walk around handing these leaflets, it could create an issue with regard to the movement and the orderly transmission of the people through the facilities. It should be noted that this is not a public area. This is the sidewalks where these areas, where these protest areas are, are confined to the arena. They don't connect to any kind of public space. They're only designed to set up the transfer and the movement of people from the facility to the parking lot. With respect to the voice amplification, I direct this court to take a look at the Kovacs v. Cooper case. It's a Supreme Court case, 69, Supreme Court, 448, talking about voice amplification. And the court had said that, essentially, that to, quote, to enforce freedom in regard to the rights of others would be harsh and arbitrary in itself. The more people may more easily and cheaply reach by soundtracks, perhaps borrow without cost from some zealous supporter is not enough to call forth constitutional protection. And also it talks about there, as long as there's essentially no restriction upon the communication of ideas or discussion of issues by the human voice, by newspapers, pamphlets, the like, essentially that meets constitutional First Amendment protection. So I would argue that there is not a right, a First Amendment right to use the voice amplification system. They're allowed to communicate their ideas as they like, just from the designated areas as has been articulated in the briefs. Thank you, Your Honor. Thank you to both counsel. And we'll take the matter into advisement at the recess for today.